IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGE J. MADERA, M.D.,

    Plaintiff,

v.                                                    Case No. 1:22-CV-00285- MLG-SCY

TAOS HEALTH SYSTEMS, INC., D/B/A
HOLY CROSS HOSPITAL, BOARD OF
DIRECTORS OF HOLY CROSS HOSPITAL,
MEDICAL STAFF OF HOLY CROSS
HOSPITAL, and JOHN DOES 1-10,

    Defendants.

---

**DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Defendants Taos Health Systems, Inc., d/b/a Holy Cross Hospital, Board of Directors of Holy Cross Hospital, Medical Staff of Holy Cross Hospital, and John Does 1-10 (together, the "Defendants") submit this Motion for Partial Reconsideration asking this Court to reconsider its decision to deny, in part, Defendants' Motion for Summary Judgment. Dkt. 100 (hereafter "the Order").

**CERTIFICATE OF CONFERRAL**

The undersigned counsel conferred with counsel for Plaintiff Geoge J. Madera, M.D. ("Dr. Madera") who opposes the relief requested.

**LEGAL STANDARD**

A motion to reconsider a court's partial grant of summary judgment "is considered 'an interlocutory motion invoking the district court's general discretionary authority to review and

revise interlocutory rulings prior to entry of final judgment.'" *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1221 n. 2 (10th Cir. 2008). "In such a case, the district court is not bound by the strict standards for altering or amending a judgment" in FRCP 59(e) or 60(b). *Id.* Rather, the Court's authority to reconsider the Order stems from FRCP 54(b). *Ortega v. Edgman*, No. CIV 21-0728 RB/JHR, 2023 U.S. Dist. LEXIS 73401, *2 (D.N.M. Apr. 27, 2023). While FRCP 54(b) does not provide for a governing standard, "the court may look to the standard used to review a motion made pursuant to" FRCP 59(e). *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013). Applying this framework, this District has considered "concerns of judicial economy, avoiding piecemeal litigation, [] the posture of all the parties involved," "how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenge[d]," "the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties . . . produce[d]." *Edgman*, 2023 U.S. Dist. LEXIS 73401 at *3 (quoting *Med Flight Air Ambulance, Inc. v. MGM Resorts Int'l*, No. 17-CV-0246 WJ/KRS, 2018 U.S. Dist. LEXIS 71109, *13-14 (D.N.M. Apr. 27, 2018) and *Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238-39 (D.N.M. 2015)). Further, under FRCP 59(e), "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

## **ARGUMENT**

In the Order, the Court determined that "Section 11137 immunizes Defendants against liability for the statements contained in the NPDB [(National Practitioner Data Bank)] report." Dkt. 100 at 8. The Court found that Dr. Madera failed to present evidence that could lead a reasonable jury to conclude that Defendants knew any information in the NPDB report was false.

2

*Id.* at 6-8. Thus, the Court concluded that Defendants are entitled to immunity under Section 11137, *id.*, which applies to "any civil action with respect to [the NPDB] report." 42 U.S.C. § 11137(c).

Although the Court concluded that this immunity applied to Dr. Madera's defamation claim, it did not find the immunity applicable to his remaining claim for intentional interference with prospective economic relations. The Court concluded that "Section 11137 immunity applies to the filing and subject matter of an NPDB report" but then declined to apply immunity to the interference claim because "Madera's claim for intentional interference is based not only on the report and its contents, but also on the circumstances that led to its publication and whether Defendants could legally file it in the first place." Dkt. 100 at 8-9. Defendants respectfully request the Court reconsider this conclusion because it misapprehends the facts and incorrectly applies section 11137.

Section 11137 immunity applies to "any civil action with respect to" an NPDB report made "without knowledge of the falsity of the information contained in the report." 42 U.S.C. § 11137(c). Implementing regulations confirm a broad reach of immunity. 45 C.F.R. § 60.22 (reporters "shall not be held liable in any civil action filed by the subject of a report"). In interpreting the phrase "with respect to" in a different federal immunity provision, the Tenth Circuit stated:

> Supreme Court precedent, by which we are bound, answers the question. The Court has told us that Congress's use of the word "respecting"—a synonym for the phrase "with respect to" according to Word Office 365's friendly thesaurus—"generally has a broadening effect, ensuring that the scope of a [statutory] provision covers not only its subject but also matters relating to that subject."

*Miller v. United States*, 71 F.4th 1247, 1253 (10th Cir. 2023) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018)).

Thus, as in *Miller* and *Appling*, section 11137's grant of immunity for civil actions filed "with respect to" an NPDB report is expansive, extending immunity to "any civil action" "'concerning,' 'with reference to,' 'relating to' and the like 'to reach any subject that has "a connection with"' . . . the topics the statute enumerates.'" *Miller*, 71 F.4th at 1253 (quoting *Appling*, 584 U.S. at 717). This is true "regardless of the context in which the defense arises." *Id.*

Applying this expansive grant of immunity, courts regularly extend section 11137 immunity to all claims with damages that allegedly stem from the filing of an NPDB report. *See Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156, 175 (E.D.N.C. 2018) ("[Section 11137(c)'s] protection from liability, by the breadth of its terms, extends to injunctive relief and civil actions brought under state law, where the damages claimed are solely the result of a report to the NPDB."); *Lee v. Hosp. Auth. of Colquitt Cty.*, 353 F. Supp. 2d 1255, 1265 (M.D. Ga. 2004) (same), *aff'd*, 397 F.3d 1327, 1328-29 (11th Cir. 2005); *Desha v. La. State Bd. of Nursing*, No. 3:15-00021-JWD-RLB, 2015 U.S. Dist. LEXIS 169861, *11 (M.D. La. Dec. 18, 2015) (same); *cf. Pal v. Jersey City Med. Ctr.*, 658 F. App'x 68, 75 n.9 (3d Cir. 2016) ("The only circumstance in which this immunity is not triggered is when (1) the report contains false information and (2) the individual or entity submitting the report knew that the information was false."). This broad interpretation accords with the HCQIA's purpose of "encouraging physicians to identify and discipline physicians who are incompetent or who engage in unprofessional behavior." Dkt. 100 at 4 (*quoting Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 632 (3d Cir. 1996)).

Here, under controlling Tenth Circuit precedent as to the meaning of "with respect to," Dr. Madera's intentional interference claim is made with respect to the NPDB report. In Count 1 of Dr. Madera's operative complaint, Dr. Madera relies on potential future jobs as the basis for his

4

prospective economic relations. In doing so, Dr. Madera directly links these economic prospects to the NPDB report, stating:

> Defendants knew that filing the adverse action report about Plaintiff with the NPDB would cause medical board investigations against Plaintiff in every state where Plaintiff was licensed and hinder DLT's ability to place Plaintiff in future locum tenens assignments or find employment elsewhere on his own after his assignment at the Hospital ended.

Dkt. 37, Am. Compl., at ¶ 84. This confirms that Dr. Madera's intentional interference claim is "'concerning,' 'with reference to,' [and/or] 'relating to'" the NPDB report. *Miller*, 71 F.4th at 1253 (quoting *Appling*, 584 U.S. at 717). While Dr. Madera shifts focus away from the report and to the circumstances that led to the report in an attempt to circumvent Defendants' immunity for reporting, Tenth Circuit interpretation of "with respect to" "ensur[es] that the scope of [Section 11137] covers not only its subject"—which is, as the Court noted, "the report and its contents"—"but also matters relating to that subject"—which includes the alleged "circumstances that led to [the NPDB report's] publication and whether Defendants could legally file it in the first place." *Id.*; Dkt. 100 at 8-9.

This conclusion is supported by the Court's grant of immunity with regard to Dr. Madera's defamation claim. Particularly, the same alleged pre-report facts precede Dr. Madera's defamation claim. Dkt. 37, Am. Compl., ¶ 92 (claiming, with regard to his defamation claim, that Taos Health failed to follow the Medical Staff Bylaws and did not provide Dr. Madera due process to address the matters in the NPDB report). Put differently, the Court's order could easily be rewritten to unlawfully preclude immunity on Dr. Madera's defamation claim by pointing out that Dr. Madera's defamation claim involves the circumstances that led to the NPDB report's publication and whether Defendants could legally file it in the first place. But these alleged pre-report facts were not enough to abolish immunity on Dr. Madera's defamation claim. That is because Dr. Madera's defamation claim was made with respect to the NPDB report at issue, just like his

5

intentional interference claim. There is no legal basis to preclude immunity on Dr. Madera's intentional interference claim when the "circumstances that led to [the NPDB report's] publication" are simply the alleged facts that gave rise the submission of the report itself—as with Dr. Madera's defamation claim—and all of Dr. Madera's alleged damages arise from the report—as with Dr. Madera's defamation claim.

Specifically, the undisputed material facts demonstrate that all of Dr. Madera's alleged damages—including those associated with his intentional interference claim—are not just asserted "with respect to" the NPDB report but *as a direct result of* the NPDB report:

> Q. Okay. You'd agree with me, Dr. Madera, that your Complaint in this case alleges that your damages that you claim you have incurred arise out of the filing of the MPDB [sic] report at issue, correct?
>
> A. Yes.
>
> Q. In other words, you allege that had Holy Cross never filed the MPDB [sic] report, you wouldn't have suffered any of these damages, correct?
>
> A. I would qualify that a little bit. If Holy Cross had not filed the illegal, unjust, untempered, unthoughtful MPDB [sic] report, no, this wouldn't have happened.

Ex. A (Madera Dep. 261:19-262:5); *see also* Dkt. 78 at 9 (citing Dr. Madera's deposition); Dkt. 84 at 17-22 (attributing damages to the "toxic" report). Dr. Madera has failed to put forward any evidence of damages arising independently of the NPDB report. *See* UJI 13-1631 NMRA (stating the elements of prima facie tort, including that the defendant's act or failure to act was a cause of the plaintiff's harm). As noted above, to effectuate section 11137's grant of immunity to "any civil action with respect to" an NPDB report, immunity applies to all claims with damages that allegedly stem from the filing of an NPDB report. *Robinson*, 329 F. Supp. 3d at 175; *Lee*, 353 F. Supp. 2d at 1265; *Desha*, 2015 U.S. Dist. LEXIS 169861 at *11. That is the undisputed case here.

Therefore, the Court misapprehended the facts and incorrectly applied section 11137 in concluding that Dr. Madera's intentional interference claim was not a "civil claim" made "with respect to" Defendants' filing of the NPDB report. *See Sheikh v. Grant Reg'l Health Ctr.*, No. 11-cv-1-wmc, 2014 U.S. Dist. LEXIS 69, *10 (W.D. Wis. Jan. 2, 2014) (granting defendant's motion for summary judgement "on all of plaintiff's tort law claims arising out of [defendant's] filing a report" including defamation and tortious interference with a prospective contract); *Hooda v. W.C.A. Serv. Corp.*, No. 11-CV-504A(Sr), 2013 U.S. Dist. LEXIS 71809, at *16-17 (W.D.N.Y. Apr. 30, 2013) (granting immunity from plaintiff's claims for defamation, tortious interference with prospective business relations, conspiracy to damage his professional reputation, and negligent failure to conduct a proper investigation of the events forming the basis for the adverse report).[1] Rather, Dr. Madera's intentional interference claim is predicated on—and made "with respect to"—the NPDB report, and Defendants are entitled to immunity from this claim.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court reconsider its previous decision and enter an order granting Defendants' Motion for Summary Judgment.

---

[1] Also holding:

> [T]o the extent that Plaintiff argues that the NPDB report was filed maliciously, in bad faith, or in retaliation for his criticism of the quality of care at [hospital], none of these arguments goes to the truthfulness or accuracy of the report. Plaintiff has failed to raise an issue of fact suggesting that the report was false and that the Defendants knew of its falsity. Accordingly, Defendants should be immune from liability for damages with respect to the Adverse Action Report filed with the NPDB.

*Supra* at *16-17

Dated: March 19, 2025.

                                                    **HOLLAND & HART LLP**

By: */s/ Austin W. Jensen*
Steven M. Gutierrez *(Pro Hac Vice)*
Austin W. Jensen
555 17th Street, Ste 3200
Denver, CO 80202
Tel: (303) 295-8000
sgutierrez@hollandhart.com
awjensen@hollandhart.com

Little West
HOLLAND & HART LLP
110 North Guadalupe, Ste 1
Santa Fe, NM 87501
Tel: (505) 988-4421
lvwest@hollandhart.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2025, I caused a true and correct copy of the foregoing to be filed and served electronically via CM/ECF, which caused all parties or counsel to be served by electronic means.

By: */s/ Austin W. Jensen*

34449285_v5