IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGE J. MADERA, M.D.,

    Plaintiff,

v.                                                                                        Case No. 1:22-CV-00285- MLG-SCY

TAOS HEALTH SYSTEMS, INC., D/B/A
HOLY CROSS HOSPITAL, BOARD OF
DIRECTORS OF HOLY CROSS HOSPITAL,
MEDICAL STAFF OF HOLY CROSS
HOSPITAL, and JOHN DOES 1-10,

    Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL
RECONSIDERATION OF THE COURT'S MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

    Defendants Taos Health Systems, Inc., d/b/a Holy Cross Hospital, Board of Directors of Holy Cross Hospital, Medical Staff of Holy Cross Hospital, and John Does 1–10 (together, the "Defendants") submit this Reply brief in support of their Motion for Partial Reconsideration, Dkt. 102 (the "Motion").

**ARGUMENT**

    Plaintiff Dr. Madera does not address the merits of the Motion. *See generally* Dkt. 108. Further, Dr. Madera does not dispute that his remaining claim is asserted "with respect to" the NPDB report Defendants filed. *See* 42 U.S.C. § 11137(c) (immunizing defendants from "any civil action with respect to any [NPDB] report made under [42 U.S.C. §§ 11131 et seq.]. . . without knowledge of the falsity of the information contained in the report."). In addition, Dr. Madera neither asserts any damages independent of the NPDB report nor attempts to distinguish his

remaining intentional interference claim from the dismissed defamation claim. Instead, Dr. Madera contends (1) that Defendants have used the Motion to improperly raise new arguments, (2) that the Motion is inconsistent with Defendants' previous arguments, and (3) that the Court should rewrite Section 11137(c) to foreclose immunity to the Defendants, even though they satisfied all the statute's requirements for immunity, because "the report should never have been filed in the first place." *See* Dkt. 108, pp. 1–3. None of these arguments overcome the plain language of Section 11137(c), and Defendants are entitled to immunity.

    A.    *Defendants did not raise new arguments.*

Dr. Madera asserts that Defendants raised new arguments. This is incorrect. Defendants have consistently advanced the plain language and expansive interpretation of Section 11137(c). Dkt. 78, p. 9 (arguing that "HCQIA immunity [under section 11137(c)] applies to all claims that arise from or are premised on the filing of an NPDB report."); Dkt. 88, p. 5 (noting that Section 11137 "provides immunity with respect to 'any report made under this part'"). Where, as here, "the court has misapprehended the facts, a party's position, or the controlling law," a motion for reconsideration is appropriate. *Blake v. Lea Cnty. Corr. Facility*, No. 1:17-cv-00807-MLG-KK, 2023 U.S. Dist. LEXIS 233848, *4 (D.N.M. Oct. 23, 2023) (Garcia, J.) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

    B.    *Defendants have not changed their arguments.*

Dr. Madera contends that the Defendants previously argued that Section 11137(c) immunity applies "only to the act of reporting" and that Defendants now seek Section 11111(a)[1] immunity for acts leading to the NPDB report through Section 11137(c). Dkt. 108, p. 2. Neither

---

[1] Dr. Madera cites Section 11112(a); however, the actual immunity provision referenced—which cites to Section 11112—is in 42 U.S.C. § 11111(a).

assertion is true. Section 11137(c) is not applicable "only to the act of reporting," and Defendants have never maintained such a position. Dkt. 88, p. 5 (noting that Section 11137 "provides immunity with respect to 'any report made under this part'"). Defendants have consistently argued that, under Section 11137(c), they are immune from both civil claims under the plain language of Section 11137(c). Dkt. 78, pp. 9–10. Further, Defendants have never sought and do not seek Section 11111(a) immunity. Section 11137(c) is separate from Section 11111. Dkt. 88, pp. 4–5. While Dr. Madera takes issue with the propriety of Defendants' peer review action, that does not alter the language of Section 11137(c) and its applicability to "any civil action [made] with respect to any" NPDB report made "without knowledge of the falsity of the information contained" therein. As discussed in the Motion, Dr. Madera's intentional interference claim is a civil action made with respect to the NPDB report, which contained no knowingly false statements. Therefore, Defendants are entitled to immunity.

   C. *The Court should refrain from rewriting Section 11137(c).*

Dr. Madera contends that Section 11137(c) immunity "does not immunize reporters for filing NPDB reports containing [(1)] true information or [(2)] false information that the reporting entity did not know was false when the report should never have been filed in the first place." Dkt. 108, p. 3. Both contentions misread Section 11137(c).

Section 11137 immunizes reporting parties against all civil actions made with respect to reports that contain true information. Specifically, "immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false." *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1334 (10th Cir. 1996). If there is insufficient evidence for a jury to conclude that the report was false (which includes undisputed evidence that the report was true), immunity is proper. *See e.g.*, Dkt. 100, pp.

6–7 ("The statements themselves are true and supported by independent evidence; Madera simply disagrees that they should be characterized as harassment. Accordingly, Defendants are entitled to immunity under Section 11137 because their statements on Madera's unprofessional conduct were not false.").

Further, for several reasons, the Court should reject Dr. Madera's attempt to read in an extra-statutory requirement that withholds immunity so long as the plaintiff alleges that the NPDB report should have never been filed. First, Dr. Madera cites no statutory text, caselaw, or other authority for his limiting interpretation of Section 11137(c) immunity. Whether an NPDB report "should" or "should never" have been filed is immaterial under Section 11137(c). The statute's text is clear that immunity solely hinges on (1) whether the civil action in question was made "with respect to" an NPDB report and (2) whether a defendant made knowingly false statements in the report. *Brown*, 101 F.3d at 1334 (holding that "immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false."); *Desha v. La. State Bd. of Nursing*, No. 3:15-00021-JWD-RLB, 2015 U.S. Dist. LEXIS 169861, *11 (M.D. La. Dec. 18, 2015) ("This shield even extends to state law tort claims where the damages are solely the result of a report to the NPDB"). Here, Dr. Madera does not dispute that all his claims regarding liability and damages were brought with respect to the report, and the Court already ruled that the report included no knowingly false statements. *See* Dkt. 100, p. 8. Thus, the Motion serves the simple but critical purpose of bringing to the Court's attention that it misapprehended the scope of "with respect to" under binding Tenth Circuit precedent and persuasive authorities interpreting Section 11137(c). *See* Dkt. 102. Correctly applying the scope of Section 11137(c), the Court should reject Dr. Madera's attempt to modify Section 11137(c)'s immunity requirements. *See United States v. Pauler*, 857 F.3d 1073, 1077

4

(10th Cir. 2017) ("[W]hat matters is the law the Legislature did enact. We cannot rewrite that to reflect our perception of legislative purpose.") (quoting *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 403 (2010)); *Sheker v. Grimes*, No. 94-6312, 1995 U.S. App. LEXIS 13722, *6 (10th Cir. June 5, 1995) ("Even a liberal construction of the statute cannot 'add new provisions, substantive or otherwise, which the legislative tribunal in the exercise of its permitted choice omitted or withheld.'") (quoting *E. C. Schroeder Co. v. Clifton*, 153 F.2d 385, 390 (10th Cir. 1946)).[2]

Second, Dr. Madera's proposed, vague, and extra-statutory exception for reports that "should never have been filed"—even if they contain no knowingly false information—would swallow the rule and defeat the immunity's purpose. Dr. Madera's view would chill hospitals from ever filing an NPDB report in fear of the reported physician alleging one of myriad reasons why that case's unique circumstances did not warrant the filing of an NPDB report. In this case, Dr. Madera's allegation for why the NPDB report should have never been filed: he was a temporary physician and was terminated for cause—which caused his privileges to expire automatically and without any scrutiny—before Defendants completed a professional review action. If Defendants are subject to liability and damages because of this allegation, the *raison d'être* of the NPDB will be compromised, especially in the case of locum tenens doctors who travel

---

[2] By confining their argument to the question of Section 11137(c)'s scope, the Defendants present an appropriate question for reconsideration because Section 11137(c) immunity is "complete" and "not limited to immunity from liability in damages." *Reyes v. Wilson Mem. Hosp.*, 102 F. Supp. 2d 798, 822 (S.D. Ohio 1998). And "an immunity from suit rather than a mere defense to liability . . . is effectively lost if a case is erroneously permitted to go to trial." *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 777 (10th Cir. 2012) (internal quotations omitted); *see Morris v. Noe*, 672 F.3d 1185, 1188–89 (10th Cir. 2012) (noting that when an immunity "provides a right to avoid trial" a court's decision denying immunity is immediately appealable via interlocutory appeal under the collateral order doctrine); *see also* 11 Moore's Federal Practice - Civil § 56.130 (2025).

5

state to state more than other doctors for positions that are, by definition, temporary. *See* 42 U.S.C. § 11101(2) (establishing the NPDB "to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance.").

Indeed, even under Dr. Madera's alleged facts, the NPDB Guidebook requires reporting consistent with HCQIA's purpose. Specifically, the NPDB Guidebook explains that a report following a professional review action is appropriate "even if the action started as an employment termination":

> [QUESTION]
>
> A hospital filed a report with the NPDB announcing the revocation of a practitioner's clinical privileges. The reporting hospital had established a system of professional review under its bylaws, and it also had an employment termination procedure. In this case, the hospital used the employment termination procedure, not the professional review process. The practitioner's privileges were revoked by the employment termination process, *but no action was taken through the professional review process.* The practitioner was not given a choice of which process (system of professional review or employment termination procedure) the hospital would use. Should the hospital have filed the report with the NPDB?
>
> [ANSWER]
>
> No. The termination was not a result of a professional review action and, therefore, was not reportable. It does not matter that the employment termination, which was a result of the hospital's employment termination process, automatically resulted in the end of the practitioner's clinical privileges. *However, if the hospital had performed a professional review of the practitioner's clinical privileges and revoked the practitioner's privileges as a result of the review, the professional review action would have been reportable,* <u>*even if the action started as an employment termination*</u>. In order to be reportable to the NPDB, adverse actions must be the result of professional review. *Generally, the reporting entity decides when a professional review has occurred.*

National Practitioner Data Bank Guidebook, Chapter E at E-44 (Oct. 2018), available at https://www.npdb.hrsa.gov/resources/NPDBGuidebook.pdf (emphasis added).

6

Here, it is undisputed that the Defendants terminated Dr. Madera for cause. Dkt. 100, p. 1. It is also undisputed that Defendants' credentialing committee subsequently took a professional review action to revoke Dr. Madera's privileges. *Id*. at p. 2. While the parties dispute whether Dr. Madera's privileges terminated automatically with his employment, that dispute is immaterial for purposes of whether Defendants were required to submit the report. Taking Dr. Madera's version of the facts as true, "even if the action started as an employment termination," "[Defendants] had performed a professional review of [Dr. Madera's] clinical privileges and revoked [Dr. Madera's] privileges as a result of the review" and, thus, "the professional review action [was] reportable." The guidebook's explanation accords with HCQIA's purpose of encouraging review actions and the reporting of revoked privileges regardless of whether the privileges "automatically expired" with employment, and it is supported by caselaw. *See Winger v. Meade Dist. Hosp.*, 646 F. App'x 674, 677 (10th Cir. 2016) ("[H]ospitals are required to report the termination of a physician's clinical privileges to the Board of Medical Examiners, *see* 42 U.S.C. § 11133(a)(1)(A), and may not be held liable for such reports 'without knowledge of the falsity of the information contained in [them],' *see* § 11137(c)."). Thus, even if the Court reads in an extra-statutory requirement that Section 11137(c) immunity applies only if the report was required to be filed, the report in this case was.

Therefore, upon reconsideration of the scope of Section 11137(c), Defendants ask the Court to find that Defendants are entitled to immunity from Dr. Madera's intentional interference claim because it is a civil claim made with respect to the NPDB report at issue, which the Court already concluded contained no knowingly false information.

## **CONCLUSION**

For the reasons set forth in the Motion and above, Defendants respectfully request that the Court reconsider its previous decision and enter an order granting Defendants' Motion for Summary Judgment.

Dated: April 21, 2025.

                                          **HOLLAND & HART LLP**

                                          By: */s/ Austin W. Jensen*
                                          Steven M. Gutierrez *(Pro Hac Vice)*
                                          Austin W. Jensen
                                          555 17th Street, Ste 3200
                                          Denver, CO 80202
                                          Tel: (303) 295-8000
                                          sgutierrez@hollandhart.com
                                          awjensen@hollandhart.com

                                          Little West
                                          HOLLAND & HART LLP
                                          110 North Guadalupe, Ste 1
                                          Santa Fe, NM 87501
                                          Tel: (505) 988-4421
                                          lvwest@hollandhart.com

                                          **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 21, 2025, I caused a true and correct copy of the foregoing to be filed and served electronically via CM/ECF, which caused all parties or counsel to be served by electronic means.

By: */s/ Austin W. Jensen*

34632788_v2