IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GEORGE J. MADERA, M.D.,**

    **Plaintiff,**

v.                                       **CASE NO. 1:22-CV-00285-MLG-SCY**

**TAOS HEALTH SYSTEMS, INC.,**
**D/B/A HOLY CROSS HOSPITAL,**

    **Defendant.**

**PLAINTIFF'S REPLY
TO DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S OPPOSED MOTION FOR A NEW TRIAL [DOC. 160]**

**I. Defendant Misconstrues Plaintiff's Challenge to the Verdict as a Challenge to the Jury Instructions.**

Defendant's first argument in opposition to Plaintiff's motion for a new trial—that Dr. Madera invited error in the jury instructions and his challenge is to the instructions themselves—misconstrues the crux of Dr. Madera's argument that the jury's verdict was irreconcilably inconsistent. (Resp. [Doc. 160], at 2.) Dr. Madera has no quarrel with the jury instructions themselves, or that he had the burden to prove each element of his intentional interference with economic relations claim. And Dr. Madera did not argue that damages should have been presumed.

Dr. Madera's issue with the verdict is that because the tort of intentional interference with economic relations protects economic interests, finding interference with those interests logically compelled the jury to find some resultant pecuniary loss to the extent that Dr. Madera presented any evidence of damages. The claim, therefore, could fail on the damages element only if Dr.

Madera did not present any evidence of damages at all. It is undisputed that Dr. Madera presented evidence of his damages, which is underscored by the fact that the Court denied Defendant's motion for judgment as a matter of law at the close of Dr. Madera's evidence for lack of evidence to support an element of his claim.

If the jury did not believe that Dr. Madera suffered any damages resulting from Defendant's conduct, then the jury should have answered "no" to Element 4 - Causation. The jury, though, found causation, which begs the question: What harm did Defendant's intentional interference with Dr. Madera's economic relations cause him? The answer is damages, of course.

Defendant's robust exposition of all of the evidence that it presented in opposition to Dr. Madera's evidence on damages misses the point that all of that evidence goes to mitigation, not to whether Dr. Madera suffered any damages at all from Defendant's intentional interference with his prospective economic relations. (Resp., at 17-20.) Whether, e.g., Dr. Madera did not receive the COVID 19 vaccine goes to whether he mitigated his economic damages, not whether he suffered any economic damages at all. The jury was free to consider Defendant's evidence concerning Dr. Madera's damages—Dr. Hargrove-Brown, Ms. Skilling, etc.—on the issue of whether Dr. Madera mitigated his damages and had the opportunity to reduce Dr. Madera's damages all the way to zero if they wanted to give him no money by answering Question No. 5: "What is the total amount of damages that the Plaintiff failed to mitigate through ordinary care?"

Finally, Defendant's suggestion that Dr. Madera's counsel skipped the first day of 1L torts class in law school such that they do not comprehend that damages are a separate element of any tort actually supports Dr. Madera's position. (Resp., at 14.) Defendant points to the elements of negligence for this proposition. (*Id.*) The tort of of negligence, however, is not designed to protect purely economic interests. But the tort of intentional interference with economic relations is. This

2

is why the jury's finding of intentional interference with economic relations without damages is irreconcilably inconsistent.

**II. The Special Verdict Is a Special Verdict Under Rule 49(a).**

Despite accepting the Special Verdict's "Special Verdict" appellation as such at trial, Defendant now argues that the Special Verdict is not a special verdict. (Resp., at 8-13.) This is a transparent attempt to deprive Dr. Madera of the opportunity to challenge the verdict after trial by claiming that he waived that right by not objecting to the jury's special verdict when rendered. The Court should reject this ploy.

Defendant relies heavily on *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993), claiming the general verdict form in that case is "virtually identical" to the Special Verdict here. (Resp., at 9.) Defendant, however, does not quote or even cite the actual verdict form in *Resolution Trust*, despite that it is set forth in footnote 11 of the opinion:

> Do you find that defendant Professional Investors Insurance Group, Inc., has liability to the plaintiff under Count 13?
>
> Yes ___ No X
>
> Do you find defendant Professional Investors Insurance Group, Inc. has violated the provisions of the statutes as defined in these instructions in any one of the following counts?
>
> Count 1 (RICO fraud in the sale of securities)
>
> Yes X No ___
>
> Count 2 (RICO conspiracy to commit fraud in the sale of securities)
>
> Yes ___ No X
>
> Count 3 (RICO fraud in the sale of securities)

               Yes ___ No X

Count 4 (RICO conspiracy to commit fraud in the sale of securities)

               Yes ___ No X

Count 5 (RICO wire fraud)

               Yes X No ___

Count 6 (Conspiracy to commit RICO wire fraud)

               Yes ___ No X

Count 7 (RICO bank fraud)

               Yes X No ___

Count 8 (Conspiracy to commit RICO bank fraud)

               Yes ___ No X

Count 9 (RICO interstate travel in execution of scheme to defraud)

               Yes ___ No X

Count 10 (Conspiracy to commit RICO interstate travel in execution of scheme to defraud)

               Yes ___ No X

Count 14 (Securities violation of 12(2))

               Yes ___ No X

The *Resolution Trust* verdict form sought yes/no answers to the ultimate questions of whether the defendant violated specific statutes that were the basis for the plaintiff's claims. It is nothing like the verdict form in this case, which asked the jury to determine the existence of certain facts that would establish each element of intentional interference with prospective economic relations: (1) existence of prospective economic relations; (2) intent; (3) improper means; (4)

causation; and (5) damages. *Belleview Valley Land Co. v. Walterscheid Trucking & Farms*, 1998 U.S. App. LEXIS 18368, *7 (10th Cir. 1998) (noting that improper means and intent elements of intentional interference with economic relations under New Mexico law are questions of fact.)

Finally, Defendant conspicuously ignores the Court's Final Judgement [Doc. 154], which states that the jury "returned a Special Verdict" and entered judgment on the verdict in Defendant's favor after listing the factual elements of the claim that Dr. Madera proved by a preponderance of the evidence and that the jury concluded that he did not meet his burden of proof on the element of damages. Facts, of course, are proven by a preponderance of the evidence. *See* 10th Cir. Pattern Jury Instruction 1.05.1 ("Preponderance of evidence is evidence sufficient to persuade you that a fact is more likely present than not present"). Thus, the Court applied the law to the jury's findings of facts to enter judgment, which is the hallmark of a special verdict. *Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1142 (10th Cir. 2005). ("A special verdict [] presents the jury with specific questions of fact. After the jury returns its verdict, the court applies the law to the facts found by the jury and enters judgment accordingly.")

### III.   Defendant Did Not Offer Evidence that Dr. Madera Suffered No Damages.

Defendant does not contradict Dr. Madera's point that Defendant did not adduce evidence at trial that Dr. Madera suffered no damages. Notably, Defendant's vocational expert Kerry Skillin testified that Dr. Madera's difficulty in obtaining employment after he left Clinica Medica in March 2021 was "***also*** the result of events and actions that are unrelated to the [NPDB] report." (Resp., at 19) (emphasis added.) This testimony supports that there was another reason—the NPDB report—that Dr. Madera could not find employment and suffered economic damages as a result.

Moreover, no defense witness testified that Dr. Madera suffered no damages. Defendant did not and cannot point to any such evidence presented at trial. All of Defendant's evidence concerning Dr. Madera's damages goes to whether Dr. Madera mitigated after Defendant intentionally submitted the adverse action report to the NPDB to interfere with his ability to find employment after his tenure at Holy Cross Hospital.

Finally, Defendant's attempt to distinguish *Continental Casualty Co. v. Southwestern Bell Tel. Co.*, 860 F.2d 970, 972-973 (10th Cir. 1988), is unavailing. It does not matter that both the plaintiff and defendant offered evidence of the plaintiff's damages in that case. The point is that the jury did not consider either side's evidence and pulled a number out of thin air. The jury in this case similarly failed to consider Dr. Madera's damages evidence. They should have found that he suffered damages as a necessary consequence of Defendant's interference with his prospective economic relationships, even if it was a nominal amount.

The jury could not reasonably rely on any of Defendant's evidence concerning damages to conclude that Dr. Madera suffered no damages at all. Had the jury actually determined that Dr. Madera suffered no damages at all, then they should have answered "no" to Element 4 – Causation. Instead, the jury found that Defendant's interference caused harm to Dr. Madera's prospective economic relationships but without quantifying the harm in the form of damages. That makes no sense and is against the weight of the evidence on damages presented at trial.

**IV.    Conclusion.**

The jury's Special Verdict is irreconcilably inconsistent and against the weight of the evidence on damages. The jury was confused or abused its power or both when it found that Defendant intentionally interfered with Dr. Madera's prospective economic relationships but that

such interference did not result in damages. The Court, therefore, should cure the jury's error by granting Dr. Madera a new trial.

Respectfully submitted,

**BRYAN J. DAVIS, ATTORNEY AT LAW, LLC**

By: /s/ Bryan J. Davis
Bryan J. Davis (N.M. Bar No. 19562)
124 Wellesley SE
Albuquerque, NM 87106
Tel: 505-697-6920
bryan@bryanjdavislaw.com

-and-

**AKENHEAD LAW FIRM, P.C.**

By:/s/ Dan Akenhead
Akenhead Law Firm, P.C.
8232 Louisiana Blvd. NE, Ste. C
Albuquerque, NM 87113
Telephone: 505-234-1497
Fax: 505-234-1782
dan@akenheadlaw.com

## CERTIFICATE OF SERVICE

On September 26, 2025, a true and correct copy of the foregoing document was served on counsel electronically through the Court's CM/ECF system.

By: */s/ Bryan Davis*
Bryan J. Davis