Case 1:22-cv-00285-MLG-SCY   Document 171   Filed 03/20/26   Page 1 of 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GEORGE J. MADERA, M.D.,

     Plaintiff,

v.                                                                Case No. 1:22-cv-00285-MLG-SCY

TAOS HEALTH SYSTEMS, INC.,
d/b/a HOLY CROSS HOSPITAL

     Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
<u>PLAINTIFF'S OPPOSED MOTION FOR A NEW TRIAL</u>**

Plaintiff Dr. George J. Madera ("Madera") was on the losing end of a civil trial. More than

a month after the verdict was announced, he filed a motion contesting the jury's verdict, which he

characterizes as irreconcilably inconsistent and contrary to the evidence presented. That challenge

is at issue here. For the reasons explained below, the Court denies his motion and finds that the

request is untimely and that the jury's verdict was entirely consistent with the evidence presented.

**RELEVANT FACTUAL BACKGROUND**

Madera was hired through a staffing agency, Delta Locum Tenens ("DLT"), to fill

workforce needs at Taos Health Systems, Inc. ("Taos"), d/b/a Holy Cross Hospital. Doc. 100 at 1.

His tenure there was brief. Following complaints of inappropriate workplace behavior, Taos fired

Madera in March of 2019 after he had been on the job a mere three months. *See id.* at 1-2 (citing

Doc. 78-2). Taos subsequently notified DLT of its decision, and the agency responded via email

that "Madera will be removed from [DLT's] eligible list of providers." *Id.* at 2 (internal quotation

marks omitted) (quoting Doc. 78-2 at 55). Taos administrators did not confirm that DLT had

followed through on that course of action, and they subsequently learned that DLT had not removed Madera from its service panel. *Id.* (citing Doc. 78-2 at 58).

A few weeks later, Taos was notified of additional patient care concerns that surfaced during Madera's time at Holy Cross. *Id.* (citing Doc. 78-2 at 11). Taos initiated a peer review and referred the matter to the facility's credentialing committee. *Id.* (citing Doc. 78 at 5 ¶ 11). They voted unanimously to revoke Madera's clinical privileges. *Id.* (citing Doc. 38 at 21 ¶ 62). Madera was not notified of the committee's actions. He was given neither notice nor opportunity to attend the meeting or defend himself. *Id.* (citing Doc. 38 at 20 ¶¶ 57-58, 21 ¶ 60).

Taos subsequently filed an adverse action report with the National Practitioner Data Bank ("NPDB"). *Id.* (citing Doc. 78-2 at 2-4 (NPDB report dated April 19, 2019); Doc. 38 at 23 ¶ 66). That submission succinctly described the revocation of Madera's clinical privileges and preceding events, namely his unprofessional and inappropriate interactions with hospital staff. *Id.* (citing Doc. 78-2 at 3). It also contained a mistake. Taos erroneously stated that DLT "had dropped him" from its service panel. *Id* (citing Doc. 78-2 at 3). This report (error included) was sent to several state licensing boards and the Federation of State Medical Boards. *Id.* (citing Doc. 37 at 14 ¶ 72; Doc. 38 at 24 ¶ 72). Over a year later, Taos withdrew the report from the NPDB, citing concerns that it had inaccurately recounted Madera's status with DLT. *Id.* (citing Doc. 78 at 6-7 ¶ 15). When the reporting service sought a reason for withdrawal of the report, Taos selected (from a dropdown menu) that "[t]he report was not required to be filed; the action does not meet the legal reporting criteria." *Id.* (alteration in original) (citing Doc. 84-1 at 1).

### RELEVANT PROCEDURAL HISTORY

Madera later learned of the NPDB report and litigation ensued. *See* Doc. 37. Madera brought claims for intentional interference with prospective economic relations for which he

sought resulting damages.[1] *See id.* The matter ultimately went to trial. *See* Doc. 154. After the

presentation of evidence, a verdict form was provided to the jury.[2] *See id.* It was titled "SPECIAL

VERDICT" and asked the jury to address the following question and subparts:

> **QUESTION 1:** Has the Plaintiff proven by a preponderance of the evidence each of the following five elements of his claim for intentional interference with prospective economic relations against the Defendant?
>
> **Answer (circle one):**
>
> Element 1: Existence of Prospective Economic Relationships
> YES          NO
>
> Element 2: Intent
> YES          NO
>
> Element 3: Improper Means
> YES          NO
>
> Element 4: Causation
> YES          NO
>
> Element 5: Damages
> YES          NO
>
> If you answered "NO" to any of the elements in Question 1, please sign the Verdict Form and do not answer the remaining questions.

---

[1] The Court granted summary judgment on Madera's defamation claim. *See* Doc. 100. That decision is not relevant to the instant question.

[2] The parties concurred as to the jury verdict form. Notably, Madera did not suggest that the jury could potentially resolve the matter inconsistently, and he did not raise concerns that the jury must award damages upon a finding of causation. *See* Doc. 160-1 at 4-5; Doc. 126 at 49 (Plaintiff's Proposed Jury Instruction regarding the elements of intentional interference) (citing *M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, 94 N.M. 449, 612 P.2d 241 when proposing a fifth element of damages). Had he believed that to be the case, Madera should have raised that matter during trial.

Doc. 151 at 2. The jury circled "YES" to Elements 1 through 4 but circled "NO" as to Element 5: Damages. *Id.* Apparently, the jury found that Taos's conduct was tortious, but that Madera did not suffer damages.[3]

## DISCUSSION

Madera now moves the Court for a new trial on the grounds that the jury's verdict is irreconcilably inconsistent and the jury's finding that Madera suffered no economic damages is against the weight of the evidence. Doc. 155. For the reasons given below, the Court denies the motion.

### I.    Madera's objection is untimely and therefore waived.

Madera did not question the verdict before the jury was discharged. *See* Doc. 160-2 at 3:22-6:24. Instead, he lodged his objections months later as part of a motion for new trial. Doc. 155. The timing matters because claims that a general jury verdict is internally inconsistent are subject to different deadlines than those associated with special verdicts. Specifically, "unless the verdict is inconsistent on its face such that the entry of judgment upon the verdict is plain error," objections to general jury verdicts—including ones utilizing special interrogatories—are waived if the party does not raise the issue before the jury is discharged. *Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1141 (10th Cir. 2005) (internal quotation marks omitted) (quoting *Resol. Tr. Corp. v. Stone*,

---

[3] That result makes sense given the evidence proffered during trial. It showed that Madera did little to mitigate damages. He refused to be vaccinated during the apex of the COVID-19 pandemic, which precluded his hiring at many medical facilities. *See* Doc. 160-3 at 18 ("Dr. Madera elected not to be vaccinated. As a physician and healthcare worker with mandates in place, vaccination was required unless an individual had a medical or religious reason."). There was also expert testimony regarding how Madera's lack of interpersonal skills made it difficult for him to maintain employment. Doc. 160-3 at 13-14 ("Individuals [found] out that he was . . . difficult to work with . . . mak[ing] it difficult . . . to maintain employment . . . . Had there not been behavioral issues and inappropriate conduct, then there were no issues, to my understanding, of his skills and his ability to perform the duties as a cardiologist.").

998 F.2d 1534, 1545 (10th Cir. 1993)), *abrogated on other grounds by, Dietz v. Bouldin*, 579 U.S. 40 (2016), *as recognized in, Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 990-91 (10th Cir. 2025); *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 944 (10th Cir. 1994) (finding an objection as to inconsistency of a general jury verdict with interrogatories was waived since it was raised a week after the jury was discharged). By contrast, the Federal Rules of Civil Procedure do not provide for a specific deadline to challenge a special verdict.[4] *Johnson*, 412 F.3d at 1141 (citing *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993), *abrogated on other grounds by*, *Boyle v. United States*, 556 U.S. 938 (2009)); *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 851 (10th Cir. 2000) ("Although a party waives a claim of inconsistent verdicts based on a general jury verdict under Fed. R. Civ. P. 49(b), if not timely raised, this rule does not apply to special verdicts under Fed. R. Civ. P. 49(a).")). Accordingly, whether Madera's objections are timely turns on whether the verdict here is characterized as a general or special verdict.

A.      **Distinguishing between a general and special verdict**

"The Federal Rules of Civil Procedure contemplate three forms of verdicts: the general verdict, the special verdict, and the general verdict with answers to written questions." *Toney v. Sullivan*, No. 15-3209-EFM, 2022 WL 1044920, at *4 (D. Kan. Apr. 7, 2022). Each form requires something different from the jury.

A general verdict does not require the jury to make factual findings; it requires only that they "announce the 'ultimate legal result of each claim.'" *Johnson*, 412 F.3d at 1142 (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003)). "Simply put, a general verdict permits the jury to decide who wins." *Id.* (internal quotations omitted). This remains true

---

[4] Because a party challenging a special verdict is typically requesting a new trial, Federal Rule of Civil Procedure 59 will apply, which requires a motion for new trial be filed within twenty-eight days after entry of the judgment. *See* Fed. R. Civ. P. 59(b).

even when the jury resolves written questions as part of completing the verdict form. In that circumstance—a general verdict with special interrogatories—"the court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide." Fed. R. Civ. P. 49(b); *see also Thompson*, 34 F.3d at 944 (finding questions regarding damages, bad faith, and violation of specific policy provisions were special interrogatories that accompanied the general verdict form requesting whether plaintiffs should recover on their contract claim).

Special verdicts are different. They present the jury with "specific questions of fact. After the jury returns its verdict, the court applies the law to the facts found by the jury and enters judgment accordingly." *Johnson*, 412 F.3d at 1142 (citing *Zhang*, 339 F.3d at 1031); *see also* Fed. R. Civ. P. 49(a) (noting for special verdicts "[t]he court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact").

The title of the verdict form is not dispositive. *Johnson*, 412 F.3d at 1143 (discussing with approval *Babcock v. Gen. Motors Corp.*, 299 F.3d 60, 60, 63 (1st Cir. 2002) (ruling a verdict form was a general verdict even with the title of "Special Verdict Form" because the jury did not just answer questions of fact but also made conclusions of law about who prevailed on each count)); *Chavez v. Stomp*, Civ. No. 10-205 JCH/ACT, 2014 WL 12798375, at \*16 (D.N.M. Jan. 16, 2014) (finding a verdict form titled "Special Verdict" was a general verdict because the jury determined which party prevailed on each claim and there was no application of law left for the trial judge to administer). The salient consideration is the role of the jury in determining the verdict. *See Johnson*, 412 F.3d at 1143; *Thompson*, 34 F.3d at 944-45; *Stone*, 998 F.2d at 1546-47.

**B.      The verdict form submitted to the jury in this case was a general verdict with special interrogatories**

The verdict form in this case requires the jury to first determine whether Madera proved by a preponderance of the evidence the elements of intentional interference with prospective economic relations. Doc 151 at 2. That inquiry mirrors other general verdict forms that inquired whether a plaintiff has met their burden in proving a claim. *Stone*, 998 F.2d at 1546 n.11 (concluding the response to the question "Do you find that defendant Professional Investors Insurance Group, Inc. has liability to the plaintiff under Count 13?" to be a general verdict); *Babcock*, 299 F.3d at 63 (finding the responses to the questions "Has plaintiff proved her negligence claim by a preponderance of the evidence?" and "Has plaintiff proved her product liability claim by a preponderance of the evidence?" to be general verdicts); *Chavez*, 2014 WL 12798375, at *13-14, *16 (finding the question "Did plaintiff prove, by a preponderance of the evidence, that he was not selected for a promotion due to his religious beliefs in violation of Title VII?" to be general verdicts); *id.* at *14, *16 (finding the same about the question "Did plaintiff prove, by a preponderance of the evidence, that defendant Stomp retaliated against him for exercise of his First Amendment rights by preventing his promotion?"). Although the verdict form in this case required a "YES" or "NO" answer as to each element, the jury's responses determined the ultimate result—i.e., whether Madera prevailed on his claim.[5] *See Johnson*, 412 F.3d at 1142; *Stone*, 998 F.2d at 1546-47 n.11 (concluding the verdicts at issue were general verdicts because the jury's response to the initial question on each verdict established the party that prevailed on the relevant count). No further legal analysis was required from the Court once the jury determined Madera had not met his burden at trial. *See* Doc. 154.

---

[5] The ultimate legal conclusion reached by the jury's verdict is reflected in the verdict form's instruction to the jury, "You must apply the law in the instructions that the Court gave you to the facts that were proved by the evidence." Doc. 151 at 1 (emphasis omitted).

The questions addressing the specific elements necessary to prove up the claim of international interference with prospective economic relations were simply special interrogatories attendant to a general verdict. *See Thompson,* 34 F.3d 944. Madera asserts that because some of those elements—such as improper means and intent—are factual questions under New Mexico law, the verdict must therefore be special. *See* Doc. 167 at 4-5 (citing *Belleview Valley Land Co. v. Walterscheid Trucking & Farms*, No. 97-2307, 1998 WL 487018, at *2 (10th Cir. Aug. 10, 1998)). This reasoning is incorrect. Rule 49(b) expressly contemplates that "written questions on one or more issues of fact that the jury must decide" can be submitted to the jury together with the general verdict. Fed. R. Civ. P. 49(b)(1). That the jury (at the parties' request) was asked to address the specific elements of the claim does not convert a general verdict into a special verdict.[6]

Given that the verdict was a general verdict with special interrogatories, Madera waived his claims of inconsistency by failing to object before the jury was discharged. *See Johnson*, 412 F.3d at 1141. The Court therefore reviews only for plain error—error that is facially inconsistent and "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005) (internal quotation marks omitted) (alteration in original) (quoting *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1118 (10th Cir. 2004)). This standard sets a high bar. "Plain error review presents 'an extraordinary, nearly insurmountable burden.'" *Id.* at 1181 (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790,

---

[6] Madera's argument that the Court's entry of a final judgment indicates there was a special verdict similarly fails. *See* Doc. 167 at 5 (citing Doc. 154). Pursuant to Federal Rule of Civil Procedure 58, judgments are entered as separate documents on the docket when juries return a general verdict, special verdict, or general verdict with answers to written questions. Fed. R. Civ. P. 58(a), (b)(1)-(2). The Court approves the form of the judgment for special verdicts and for general verdicts with special interrogatories. Fed. R. Civ. P. 58(b)(2)(A). Therefore, the entry of a final judgment does not indicate there was a special verdict in this case.

802 (10th Cir. 2001)). "[A] party must demonstrate (1) an error, (2) that is plain or obvious under existing law, and (3) that affects substantial rights." *Id.* (citing *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1168 (10th Cir. 2003)).

Madera argues that the jury erred in failing to award damages because the harm at issue in his claim is to prospective economic relations. He contends that because the jury found harm occurred to his prospective economic relations, it follows that economic damages must have occurred. *See* Doc. 155 at 3-4. This argument is unsupported. He offers no legal authority holding that harm to prospective economic relations must be monetary or that a finding of causation necessarily compels a damages award. *See* Doc. 155 at 3-4; Doc. 167.[7] Madera therefore fails to establish any error under existing law, let alone an obvious one.

New Mexico recognizes the tort of intentional interference with prospective economic relations. The claim includes distinct elements, including damages.[8] *Clary v. Total Facility Sols., Inc.*, No. 20-768 JAP/LF, 2021 WL 1754196, at *4 (D.N.M. May 4, 2021) (citing *Guest v.*

---

[7] Madera's general reliance on two Tenth Circuit cases regarding irreconcilably inconsistent verdicts does not advance his position. *See* Doc. 155 at 5 (discussing *Cheney v. Moler*, 285 F.2d 116 (10th Cir. 1960); *Bonin v. Tour West, Inc.*, 896 F.2d 1260 (10th Cir. 1990)). First, neither case addresses New Mexico law or the claim of intentional interference with prospective economic relations. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994) (noting a federal court sitting in diversity must apply the law of the forum state); *Cheney*, 285 F.2d at 117 (analyzing jury verdict regarding Kansas law for assault and battery); *Bonin*, 896 F.2d at 1263 (analyzing jury verdict regarding a negligence claim from the District of Utah). Second, neither case applies the plain error standard to the verdicts at issue. *See Cheney*, 285 F.2d 116; *Bonin*, 896 F.2d 1260.

[8] New Mexico courts generally refer to this tort as "intentional interference with prospective contractual relations." *See M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, ¶¶ 12-14, 94 N.M. 449, 612 P.2d 241 (noting that intentional interference with prospective contractual relations is an appropriate tort claim for interference with "business relations" or "economic expectancies" when there is no contract). The Tenth Circuit has therefore looked to New Mexico case law on prospective contractual relations when analyzing claims for interference with prospective economic relations. S*ee Simon v. Taylor*, 794 F. App'x 703, 712-13 (10th Cir. 2019).

*Berardinelli*, 2008-NMCA-144, ¶ 32, 145 N.M. 186, 195 P.3d 353); *see also M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, ¶ 20, 94 N.M. 449, 612 P.2d 241 (adopting the claim of intentional interference with prospective contractual relations set forth in the Restatement (Second) of Torts § 766B (A.L.I. 1979)). Madera was required to prove each of those elements to sustain his claim.[9] *See Guest*, 2008-NMCA-144 at ¶ 32 ("To prove intentional interference with prospective contractual relations, [Plaintiff] must show that Defendants *damaged* [him]by either (1) inducing or otherwise causing [Defendant] not to enter into or continue a prospective relation with [Plaintiff] or (2) preventing [Plaintiff] from acquiring or continuing a prospective relation with [Defendant]." (emphasis added)). And like all claims sounding in tort, liability and damages are separate inquiries. *See* UJI 13-1801 NMRA (instructing jurors "not to engage in any discussion of damages unless you have first determined that there is liability, as elsewhere covered in these instructions").

The jury instructions note this distinction. *See* Doc. 140 at 20 (Jury Instruction No. 15). The jurors were told to first determine liability and then consider any damages consistent with the evidence. *See id*. They were also instructed on the various elements relevant to economic, noneconomic, and punitive damages. *Id.* at 23-24, 26. But nothing required them (nor was there any legal obligation) to find damages if liability was demonstrated. Accordingly, a jury could find (and this one did) that Madera proved liability, including causation, but failed to prove damages. The result is neither facially inconsistent nor plainly erroneous.

---

[9] Here, Madera specifically requested the Court list damages as a distinct element for his intentional interference with prospective economic relations claim. *See* Doc. 126 at 49; Doc. 132 at 3. Taos asserts that Madera's Motion for a New Trial is a disguised challenge to jury instructions he cannot now contest after trial. Doc. 160 at 1-7. Madera, however, does not assert that he should not have to prove the distinct element of damages. Doc. 167 at 1. The Court therefore declines to address Taos's argument that the Motion for New Trial is a challenge to jury instructions.

**II.**   **Madera offers no evidence to demonstrate the verdict is against the weight of the evidence.**

"A motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court." *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996) (citing *Richardson v. City of Albuquerque*, 857 F.2d 727, 730 (10th Cir. 1988)). "When a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (internal quotation marks omitted) (quoting *Ryan Dev. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F,3d 1165, 1172 (10th Cir. 2013)). The court draws all inferences from the evidence in favor of the non-moving party. *Id.* (quoting *Henry v. Storey*, 658 F.3d 1235, 1238 (10th Cir. 2011)). The court is not to weigh the evidence or judge witness credibility. *Id.*

Applying this standard here, Madera fails to demonstrate—even prima facie—that the verdict was contrary to the weight of the evidence in this case. His motion asserts that he presented evidence of economic damages in the form of lost past and future income to the jury, and the "jury apparently disregarded this evidence completely." Doc. 155 at 6-8; Doc. 167 at 6. That claim is unsubstantiated. He provides no citations to the trial record, and he did not submit any exhibits to support his claims. *See* Docs. 155, 167. The scant support he provides is based entirely on counsel's recollections. More is required. The Court cannot evaluate Madera's contention without some evidentiary support. *See Owen v. Sw. Airlines*, No. 92-2176, 1993 WL 214568, at *1 (10th Cir. June 18, 1993) (stating the court was unable to review a sufficiency-of-the-evidence claim because the movant failed to include a transcript of the trial) (citing Fed. R. App. P. 10(b)(2)). Regardless, even assuming arguendo that Madera presented evidence of damages, it may be that the jury simply found that evidence unpersuasive. The Court may not reweigh the evidence or substitute its

11

judgment for the jury. *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995) (citing *Tennant v. Peoria & Pekin Underground R.R.*, 321 U.S. 29, 35 (1944)).

## CONCLUSION

In conclusion, Plaintiff Dr. George Madera's Motion for a New Trial, Doc. 155, is denied in its entirety.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA